UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

LONNIE KADE WELSH,

                      Plaintiff,

v.

MISTY DIAZ, *et al.*,

                    Defendants.

No.  5:22-CV-00237-H

## OPINION AND ORDER

In the sole claim remaining in this civil-rights action under 42 U.S.C. § 1983, Plaintiff Lonnie Kade Welsh, then a pretrial detainee, complains that Defendants Lamb County Jail Administrator Misty Diaz and Lamb County Sheriff Gary Maddox denied him due process in violation of the Fourteenth Amendment when they confiscated five newsletters without providing him notice and an opportunity to object.  Defendants now jointly move to dismiss under Federal Rule of Civil Procedure 12(b)(6) and assert their entitlement to qualified immunity.  Dkt. No. 35.  Plaintiff filed a response.  Dkt. No. 37.

As explained below, after considering the briefing of the parties and the applicable law, the Court finds that Plaintiff has failed to overcome Defendants' assertion of qualified immunity and grants Defendants' motion to dismiss.  In reaching that conclusion, the Court also resolves Defendants' motion to strike as untimely Plaintiff's response to their motion to dismiss, Dkt. No. 39, to which Plaintiff responded, Dkt. No. 41, and Defendants replied.  Dkt. No. 43. Defendants also filed a reply to Plaintiff's response to the motion to dismiss, subject to their motion to strike.  Dkt. No.  40.

1.    **Background**

    A.    **The newsletter claim and its procedural history**

Plaintiff filed this lawsuit alleging multiple violations of 42 U.S.C. § 1983 stemming from his detention at the Lamb County Jail between September 2020 and March 2022.  *See* Dkt. No. 1.  Relevant here, Plaintiff alleges that he ordered six Criminal Legal News and Prison Legal News newsletters from the publisher, but he only received the last one.  Dkt. No. 1 at 4.  Upon receipt of the sixth newsletter on September 13, 2021, Plaintiff contacted the publisher about the missing newsletters, and they informed him that all six newsletters were sent to him at the Lamb County Jail beginning on or about March of 2021.  Plaintiff alleges that he asked Defendant Diaz about the missing papers, but she merely responded that he could not prove that she took them.  Plaintiff then confronted Defendant Maddox, asking why he had confiscated the newsletters, and in response, Maddox denied doing so.  However, Maddox also explained that the newsletters were considered contraband until a change of policy went into effect several months later, on November 5, 2021.  Plaintiff claims that the denial of the newsletters caused him "sever[e] depression, anxiety, and sleepless nights due to worrying, depressive state of mind, and fear produced by anxiety."  *Id.*  He seeks compensatory, exemplary, nominal, and punitive damages.  *See* Dkt. No. 1 at 27.

Senior United States District Judge Sam R. Cummings transferred the case to the United States Magistrate Judge for screening under 28 U.S.C. § 1915.  After reviewing authenticated records and Plaintiff's responses to a questionnaire, Dkt. No. 15, the Magistrate Judge entered his findings, conclusions, and recommendation (FCR) for disposition of Plaintiff's claims.  *See* Dkt. No. 20.  The FCR described the claim as follows:

> Welsh does not specifically allege that Maddox and/or Diaz are responsible for
> the confiscation (*see* [Dkt. No. 1 at 4]); however based on Welsh's assertions that
> when confronted, Diaz said "[Welsh] could not prove [she and Maddox] took
> the paper," and Maddox stated "the papers were considered contraband by his

2

policy," the undersigned liberally construes Welsh's allegations as contending that they confiscated his papers without notifying him.

Dkt. No. 20 at 56, n.35.

The Magistrate Judge further found that Plaintiff is "entitled to certain procedural protections, including notice of rejected mail and an opportunity to be heard." *See* Dkt. No. 20 at 56, citing *Abshire v. Mailroom*, 852 F. App'x 153, 154 (5th Cir. 2021). Thus, the FCR concludes that Plaintiff's newsletter allegations stated a plausible claim at screening and recommended that Defendant Diaz and Maddox should be required to answer or otherwise plead to Plaintiff's allegation that they violated his procedural due process rights under the Fourteenth Amendment. *See id.* at 57, 74–75. The Magistrate Judge also recommended that all of Plaintiff's other claims and all defendants other than Maddox and Diaz be dismissed with prejudice. *Id.* Plaintiff objected to the FCR. Dkt. No. 24. After appropriate review, Judge Cummings adopted the FCR, ordered Defendants Diaz and Maddox to answer to the newsletter claim, and dismissed all other named defendants and claims by order and final judgment under Federal Rule of Civil Procedure 54(b) entered September 16, 2024. *See* Dkt. Nos. 25, 26.

Defendants now move to dismiss Plaintiff's claim against them, arguing that the meager allegations contained in his complaint fail to state a claim for a due process violation and asserting that they are entitled to qualified immunity. *See* Dkt. No. 35. They deny all of the allegations against them, but they contend that even if Plaintiff's claims were true, he cannot demonstrate that their conduct was objectively unreasonable in light of clearly established law. Plaintiff filed an untimely response, arguing, in part, that the Court already screened his case under 28 U.S.C. § 1915(e)(2)(B)(i)–(ii) and determined that Plaintiff's complaint, as supplemented by his responses to the questionnaire, "contains 'sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *See* Dkt. No. 37 at 3-8.

3

Thus, Plaintiff argues that Defendants cannot now move for dismissal for failure to state a claim under Rule 12(b)(6). Plaintiff also cites several cases in an attempt to negate Defendants' entitlement to qualified immunity.

### B.    Defendants' motion to strike Plaintiff's response and replies

Defendants move to strike Plaintiff's response, urging the Court to find that it was untimely under Local Rule 7.1(e), which requires a response to an opposed motion to be filed within 21 days from the date the motion is filed. Dkt. No. 39 at 1. They argue that under that rule, Plaintiff's response was due no later than January 23, 2025, but it was not received by the Clerk until January 27, 2025. *See id.; see also* Dkt. No. 37 at 8. Defendants argue that the prison mailbox rule does not apply to Plaintiff because he is no longer detained in the Lamb County Jail but instead resides in the Texas Civil Commitment Center. They point to the Fifth Circuit's opinion in a related case filed by Plaintiff, which explains that the prison mailbox rule does not apply to civilly committed individuals. *See Welsh v. Unknown Male Shift Supervisor*, 2023 WL 6533457, *2 n.5 (5th Cir. Oct. 6, 2023) (per curiam) (refusing to apply the mailbox rule to Welsh, a civilly committed individual, and finding that he filed his notice of appeal one day too late).

In his reply to the motion to strike, Plaintiff makes several arguments that his response should not be stricken, including an argument that the Fifth Circuit decision in *Welsh v. Unknown Male Shift Supervisor* was "wrongly decided." *See* Dkt. No. 41. But, as pointed out by Defendants in their reply, Dkt. No. 43, even if the mailbox rule did apply to Plaintiff, it would not help him because he has presented no evidence of when he mailed the response in the first place.

Indeed, the certificate of service attached to his untimely filing states only "I, Lonnie Kade Welsh, certify that a true and correct copy of the forgoing has been served postage prepaid

by placing it with the U.S.P.S. to: [address of counsel for Defendants]." *See* Dkt. No. 37 at 7. The envelope in which the pleading was contained bore no dated postmark, but it is stamped as received by the Clerk of Court on January 27, 2025. Dkt. No. 37 at 8. And notably, in his reply to the motion to strike—which is similarly undated—Plaintiff focuses his arguments on the assertion he is entitled to the prison mailbox rule, but he never states when he allegedly deposited the response for mailing. Plaintiff has failed to demonstrate that he is entitled to the prison mailbox rule, or that if he is, the pleadings were mailed in a timely manner. Thus, the Court concludes that Plaintiff's response to Defendants' motion to dismiss is untimely and grants Defendants motion to strike it. Alternatively, the Court finds that even if it were to permit the late filing, it would not overcome Defendants' entitlement to qualified immunity.

## 2.    Legal Standards

### A.    Rule 12(b)(6)

Rule 12(b)(6) allows dismissal if a plaintiff "fails to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). The Court must accept well-pleaded factual allegations as true, but the plaintiff must plead "enough facts to state a claim of relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (holding that "to survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" (quoting *Twombly*, at 555)).

A claim is facially plausible when it asserts facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This determination is context-specific and requires the court to draw upon its own experience and common sense. *Id*.

**B.    Section 1983 and Qualified Immunity**

Section 1983 "provides a claim against anyone who 'under color of any ordinance, regulation, custom, or usage, of any State' violates another's constitutional rights." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).  "A plaintiff makes out a [Section] 1983 claim if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law.'" *Rich v. Palko*, 920 F.3d 288, 293–94 (5th Cir. 2019) (quoting *Brown v. Miller*, 519 F.3d 23, 236 (5th Cir. 2008)).

However, "[t]he doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011).  Defendants who perform discretionary duties— such as police officers and jailers—may invoke the affirmative defense of qualified immunity in response to a plaintiff's Section 1983 suit.  Once the defense of qualified immunity has been raised, the plaintiff has the burden of demonstrating that "(1) the official violated a statutory or constitutional right, and (2) the right was 'clearly established' at the time." *Benfield v. Magee*, 945 F.3d 333, 337 (5th Cir. 2019) (quoting *Morgan*, 659 F.3d at 371).  Courts may decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Once a court determines that the right asserted was not clearly established, it need not reach the more difficult constitutional question.  *Id.* at 242; *Morgan*, 659 F.3d at 384 ("Because we have granted immunity to the [defendants] at step two of the qualified-immunity analysis, it is within our discretion to decline entirely to address the constitutionality of the defendants' conduct."). "[C]ourts should think hard, and then think hard again, before turning small cases into large ones." *Camreta v. Greene*, 563 U.S. 692, 707 (2011).

In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether the plaintiff has alleged any violation of a clearly established right, and, if so, whether the individual defendant's conduct was objectively reasonable. *Siegert v. Gilley*, 500 U.S. 226, 231 (1991); *Duckett v. City of Cedar Park*, 950 F.2d 272, 276–80 (5th Cir. 1992). In so doing, the court should not assume that plaintiff has stated a claim, i.e., asserted a violation of a constitutional right. *Siegert*, 500 U.S. at 232. Rather, the court must be sure that, if the facts alleged by plaintiff are true, a violation has clearly occurred. *Connelly v. Comptroller*, 876 F.2d 1209, 1212 (5th Cir. 1989).

A mistake in judgment does not cause an officer to lose his qualified immunity defense. The Supreme Court explained long ago that "[t]he qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341–43 (1986)). And "an allegation of malice is not sufficient to defeat immunity if the defendant acted in an objectively reasonable manner." *Malley*, 475 U.S. at 341. Further, that the officer himself may have created the situation does not change the analysis. That he could have handled the situation better does not affect his entitlement to qualified immunity. *Young v. City of Killeen*, 775 F.2d 1349, 1352–53 (5th Cir. 1985).

When a defendant relies on qualified immunity, the burden is on the plaintiff to negate the defense. *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010); *Foster v. City of Lake Jackson*, 28 F.3d 425, 428 (5th Cir. 1994). The standard is demanding. *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and modifications omitted). "There are two ways to demonstrate clearly established law." *Batyukova v. Doege*, 994

7

F.3d 717, 726 (5th Cir. 2021). In the typical case, the plaintiff "identif[ies] a case or body of relevant case law in which an officer acting under similar circumstances . . . was held to have violated the [Constitution]." *Id.* (quotation marks and citations omitted). This approach "do[es] not require a case directly on point," but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). That is, the clearly established law upon which the plaintiff relies should not be defined at a high level of generality but must be particularized to the facts of the case. *Id.*

Thus, failure to identify a case where an officer acting under similar circumstances was held to have violated a plaintiff's rights will most likely defeat the plaintiff's ability to overcome a qualified immunity defense. *Id.*; *Surratt v. McClarin*, 851 F.3d 389, 392 (5th Cir. 2017). In rare cases, however, "the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 64 (2018); *cf. Taylor v. Riojas*, 592 U.S. 7, 9 (2020) ("Confronted with the particularly egregious facts of this case, any reasonable officer should have realized that [the plaintiff's] conditions of confinement offended the Constitution."). Qualified immunity raised in a motion to dismiss must be considered and decided by the district court before other litigation in the case proceeds, and all discovery must be stayed during that process. *Carswell v. Camp*, 37 F. 4th 1062, 1066 (5th Cir. 2022).

### C.    Fourteenth Amendment

"Whether 'due process' has been accorded a plaintiff is not material unless he demonstrates that state action deprived him of a constitutionally protected interest." *Neuwirth v. Louisiana State Bd. of Dentistry*, 845 F.2d 553, 557 (5th Cir. 1988). "The purpose of due process is [to] 'protect a substantive interest to which the individual has a legitimate claim of entitlement.'" *Stroble v. Livingston*, 538 F. App'x 479, 480 (5th Cir. 2013) (quoting *McFaul v.*

*Valenzuela,* 684 F.3d 564, 579 (5th Cir. 2012)). To the extent that a plaintiff alleges a freestanding due process claim, "process is not an end in itself." *McFaul,* 684 F.3d at 579 (brackets and citation omitted).

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin,* 545 U.S. 209, 221 (2005). The Supreme Court has adopted a two-step analysis to examine whether an individual's procedural due process rights have been violated. First, court must determine whether the State interfered with a constitutionally protected interest, then the court must examine the sufficiency of the procedures associated with the deprivation. *Meza v. Livingston,* 607 F.3d 392, 399 (5th Cir. 2010) (citing *Kentucky Dept. of Corr. v. Thompson,* 490 U.S. 454, 460 (1989)). Process is generally sufficient if it provides for notice and the opportunity to be heard. *See Mathews. v. Eldridge,* 424 U.S. 319, 333, 348 (1976); *see also Goss v. Lopez,* 419 U.S. 565, 579 (1975) (explaining that students facing "interference with a protected property interest must be given some kind of notice and afforded some kind of hearing" to satisfy the minimum requirements due process). But "[p]rocedural due process is 'a flexible concept,' and the procedural protections due under the Fourteenth Amendment vary depending on the circumstances." *Richards v. McLane,* No. 21-20450, 2023 WL 6533453, at *7 (5th Cir. Oct. 6, 2023) (quoting *Zinermon v. Burch,* 494 U.S. 113, 125 (1990).

**3.    Discussion**

The Magistrate Judge construed Plaintiff's claims to allege that Defendants confiscated his newsletters without due process. But Defendants contend that Plaintiff's pleadings are insufficient to state a claim for a due process violation or to overcome their entitlement to qualified immunity. Indeed, Defendants argue, in part, that Plaintiff's allegations establish only

that he ordered six newsletters but only received one.  And when he asked Defendants about the missing newsletters, they denied personally confiscating them, but Maddox confirmed that the newsletters could have been classified as contraband under Lamb County policy.  *See* Dkt. No. 35 at 9.  So, Plaintiff assumes that Defendants are responsible for his missing newsletters based on jail policy.  But he alleges no facts to support his theory that Defendants knew about or were responsible for confiscating his newsletters.  Defendants argue that, as pled, the facts at most suggest negligence in mail delivery, which is not actionable.  *Id.*  In his now stricken response, Plaintiff disagrees, noting that the Magistrate Judge already screened his claim and concluded that his complaint contained sufficient factual allegations to state a claim to relief that is plausible on its face.  The problem for Plaintiff is that, although the Court determined that Plaintiff's complaint plausibly alleged a violation of his Fourteenth Amendment rights at the screening stage, it did not address whether those constitutional rights were "clearly established" in this context to negate qualified immunity.

Because the defendants have asserted the defense of qualified immunity, it is now Plaintiff's burden to negate the defense.  *See Terwilliger v. Reyna*, 4 F.4th 270, 280 (5th Cir. 2021) (holding that it is the plaintiff's burden to demonstrate that qualified immunity is inappropriate at the motion-to-dismiss stage) (citing *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009)).  Plaintiff must do so by providing the Court with a sufficiently similar case "that does not define the law at a 'high level of generality'" to show that the allegedly wrongful conduct violated clearly established law.  *Vann v. City of Southaven, Miss.*, 884 F.3d 307, 310 (5th Cir. 2018) (quoting *Cass v. City of Abilene*, 814 F.3d 721, 732–33 (5th Cir. 2016)).  After reviewing the pleadings and the record in this case, the Court finds that Plaintiff has failed to meet that burden.

A.    **Plaintiff has failed to state a claim that Defendants' actions violated his clearly established Fourteenth Amendment rights.**

Plaintiff claims that Defendants confiscated five of the six newsletters without providing him notice of the confiscation and the opportunity to be heard in violation of his procedural due process rights under the Fourteenth Amendment.  Defendants note that in his complaint, Plaintiff acknowledged that they both denied confiscating the newsletters in the first place and that Maddox stated that, if they were confiscated, it was done according to policy.  And the Court notes that Defendants do not dispute that they failed to notify Plaintiff that the newsletters were confiscated, which seems consistent with their repeated denials that they confiscated them in the first place.  In other words, Defendants assert that they could not have provided notice about missing newsletters they knew nothing about.  Interestingly, the Court also notes that although Plaintiff ordered the newsletters in March, he waited until after receiving the September 2021 issue to inquire about the other issues that he ordered.  It stands to reason that Plaintiff should have been on notice—if not directly from Defendants—that his newsletters were not being delivered for whatever reason.  Even so, Defendants argue that assuming they did confiscate the newsletters, his allegations do not demonstrate the violation of clearly established law.  That is so, they argue, because he never alleged that he was denied the ability to grieve his newsletter complaint through the Lamb County grievance process, which is sufficient to satisfy the due process requirements.

Defendants cite *Stauffer v. Gearhart*, 741 F.3d 574 (5th Cir. 2014), for the proposition that because there was a grievance process through which he could challenge the alleged confiscation of his newsletters, he was afforded due process and thus, he has failed to state a claim.  In *Stauffer*, a state prisoner alleged that TDCJ officials unlawfully confiscated his car magazines in violation of his Fourteenth Amendment due process rights.  *Id*.  Stauffer filed grievances regarding the restrictions on his reading material, as well as a lawsuit alleging that

11

the confiscation violated his due process rights because he was not provided with meaningful review of the mailroom employee's decision. *Id.* at 579–80. The Fifth Circuit found that the defendants were entitled to qualified immunity, noting that Texas law provides adequate post-deprivation remedies (like a state tort claim for conversion) and also determined that the TDCJ grievance process allowed Stauffer to contest the seizure, present his objections, and receive a response from prison authorities. In other words, the appeals court concluded that the grievance process provided Stauffer with an adequate procedural avenue to address his complaint, so he failed to state a due process claim. *Id.* at 587. In sum, Defendants argue that like the plaintiff in *Stauffer*, Plaintiff had the opportunity to object to the confiscation through the Lamb County Jail grievance process, which satisfies the requirements of due process.

In his now stricken response, Plaintiff argues that *Stauffer* is distinguishable because unlike the plaintiff in that case, who received notice of the confiscation and an opportunity to be heard through the grievance process, Plaintiff did not receive notice that his first five newsletters had been confiscated until after he received the sixth one and followed up with the publisher. *See* Dkt. No. 37 at 3. Defendants reply that Plaintiff misunderstands the holding of *Stauffer.* They emphasize that Plaintiff's allegations do not establish that he was denied access to the Lamb County grievance process. And they point out that he had an opportunity to be heard when he complained to both Diaz and Maddox after he learned of the deprivation from the publisher. Thus, he was not denied due process. *See* Dkt. No. 40 at 3–5. They note that although Plaintiff did not receive the first five newsletters, he did receive one, despite his allegation that it should have been confiscated according to the policy that did not change until November of 2021. So, they argue, Plaintiff has failed to show that they violated his clearly established due process rights because he had an opportunity to be heard through the Lamb

County grievance process and when he spoke to Diaz and Maddox about the alleged confiscation. *See* Dkt. No. 40.

Defendants also rely on *Human Rights Def. Ctr. v Winn*, 431 F. Supp. 3d 925 (E.D. Mich. 2020), to further support their argument that Plaintiff's pleadings fail to overcome their entitlement to qualified immunity. *See* Dkt. No. 35 at 7. In that case, the publisher of Prison Legal News and Criminal Legal News sued several Michigan Department of Corrections and prison officials alleging that they had adopted and implemented policies and practices prohibiting the publications from being delivered while failing to provide due process—notice of and an opportunity to challenge that censorship. *See Human Rights Def. Ctr. v. Winn* at 932. There, the Court found the individual defendants entitled to qualified immunity at the motion-to-dismiss stage because the publisher's asserted First Amendment right was not clearly established and because of the discretion extended to prison officials to determine what mail is permitted in prison. *Id.* at 937. Therefore, the defendants could not have known that they were violating a constitutional right when deciding which issues of the relevant publications to allow and which ones to prohibit. *Id.* Similarly, as to the due process claims against the individual defendants, the Michigan district court also granted qualified immunity because there was insufficient evidence of a pattern of behavior by the defendants that they were knowingly violating the plaintiff's constitutional rights. *Id.* at 938–39. And the defendants argued that ordinary negligence of the individual defendants did not rise to the level of a due process violation. The court agreed, holding that the plaintiff "cannot make the leap from lack of notice from some prisons to an intentional violation of a constitutional right." *Id.* at 939.

And, as previously mentioned, Defendants also assert that Plaintiff's allegations are insufficient for another reason—that is, that they amount to a negligent-mail-delivery claim, which is not actionable. *See* Dkt. No. 35 at 9 (*citing Pearson v. Simms*, 345 F. Supp. 2d 515, 519

13

(D. Md. 2003), aff'd, 88 F. App'x 639 (4th Cir. 2004) (noting that occasional incidents of delay or non-delivery of mail do not rise to a constitutional level)).  They argue that, at most, Plaintiff alleges he received one newsletter, did not receive others, and that Diaz and Maddox both denied confiscating the missing newsletters, but they could have been considered contraband under Lamb County policy.  *Id.*

The Court finds this argument—that, as pled, their alleged actions amount to a negligence claim rather than a due process claim—persuasive.  Moreover, it further supports Defendants' assertion that their conduct was not objectively unreasonable.  Plaintiff did not address the negligence argument.

Plaintiff cites multiple Supreme Court and Fifth Circuit cases for the general proposition that the due process clause of the Fourteenth Amendment requires that the government give notice and an opportunity to be heard before it can deprive an individual of his or her property interests.  *See* Dkt. No. 37 at 4.  But none of those cases define Plaintiff's constitutional rights with the required degree of particularity.

Plaintiff also argues that the facts of his case are similar to those in *Abshire*, 852 F. App'x 153 (5th Cir. 2021), which was cited in the FCR.  *See* Dkt. No. 37 at 3–4.  He relies on *Abshire* for the proposition that failure to notify an inmate of the rejection of his incoming mail and to give him an opportunity to appeal the decision appears to state a valid claim for a violation of Fourteenth Amendment procedural due process.  But *Abshire* does not help him negate Defendants' entitlement to qualified immunity, because it was decided in July 2021—after most of the newsletters in this case were allegedly confiscated.  Finally, Plaintiff points to *Soto v. Brock*, 795 Fed. App'x 246, 250 (5th Cir. 2019), for the prospect that rejecting a prisoner's mail without notice or an opportunity to object violated clearly established procedural due process rights.  But again, that case is distinguishable from the facts in this case because the prisoner

14

plaintiff in *Soto* sent mail to his son—who was then detained in a Texas boot camp—but the mail was rejected by the boot camp probation officer. *Id.* Unlike the plaintiff in *Soto*, Plaintiff's outgoing mail was not rejected. Thus, neither *Abshire* nor *Soto* establish that the defendant's alleged actions were clearly unconstitutional.

In short, it is Plaintiff's burden to overcome Defendants' entitlement to qualified immunity by showing that Defendants' allegedly wrongful conduct violated clearly established law, including by providing the Court with a sufficiently similar case "that does not define the law at a high level of generality." *Vann*, 884 F.3d at 310. Here, Plaintiff cannot "identify a case where a [jail administrator or sheriff] acting under similar circumstances . . . was held to have violated" any federal right of his, placing "the statutory or constitutional question beyond debate." *Surratt*, 851 F.3d at 392 (quoting *White v. Pauly*, 580 U.S. 73, 77–78 (2017) (other citations omitted)).

### B.    Plaintiff's complaint does not plausibly allege that Defendants engaged in conduct that was objectively unreasonable.

Even if Plaintiff had pled sufficient facts to allege a violation of a constitutional right that was clearly established at the time of the events giving rise to his claims, the Court finds that he has failed to allege facts that, if true, would show that they acted in an objectively unreasonable manner. As explained by Defendants, Plaintiff only alleges that he failed to receive several publications, that both defendants denied their involvement, and his alleged reason for not receiving the publications was due to a content-neutral policy at the Lamb County Jail, rather than censorship of that particular publication. Dkt. No. 35 at 10 (citing Dkt. No. 1 at 4). They argue that the only act attributed to them—enacting a mail policy at the jail—is an objectively reasonable action for a jail administrator and sheriff, considering the penological and security interests present in a modern-day jail. *Id.*; *see Ortiz v. Fort Dodge Corr. Facility*, 368 F.3d 1024, 1026 (8th Cir. 2004) (noting while prisoners have a right to send and receive mail, prison

15

officials have a legitimate interest in monitoring that mail for security reasons); *see also Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (approving prison regulations that require inmates to receive publications but allow rejection of publications that are detrimental to the security, good order, discipline, or might facilitate criminal activity). In other words, they contend that a reasonable jail administrator or sheriff could have believed that confiscating newsletters that were prohibited by jail policy[1] was reasonable.

In his now stricken response, Plaintiff attempts to refute the objective reasonableness of the confiscation policy by relying on *Fountain v. Thaler*, 629 F. App'x 592, 594 (5th Cir. 2015) (unpublished), *abrogated on other grounds by Raskin on behalf of JD v. Dallas Indep. Sch. Dist.*, 69 F.4th 280 (5th Cir. 2023). *See* Dkt. No. 37 at 6. In *Fountain*, the Fifth Circuit held that a policy that deprived a prisoner of adequate indigent general correspondence supplies and postage to correspond with his daughter stated a claim for violation of the First, Fourteenth, and Eighth Amendments. *See Fountain* at 595. Plaintiff notes that the Fifth Circuit also concluded that the district court in that case erred in dismissing a prisoner's claim that the prison's mail policy violated the First Amendment before the record was "sufficiently developed to determine whether the challenged policy was reasonably related to a legitimate and neutral penological interest." *Id.* (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). But *Fountain* focused on the prison's mail policy, not the process afforded. So, *Fountain* does not help Plaintiff negate Defendants' assertion that their actions in this case were objectively reasonable or that the available process was insufficient.

In sum, the Court finds that the conduct alleged by Plaintiff does not place Defendants among the plainly incompetent or those who knowingly violate the law. *See Hunter*, 502 U.S. at

---

[1] Plaintiff challenged the policy itself in his original complaint, but his policy claim was dismissed with prejudice in the Court's order and final judgment under Federal Rule of Civil Procedure 54(b) on September 16, 2024. *See* Dkt. No. 25, 26.

229.  At most, he has shown that Defendants negligently deprived him of five newsletters, which he had the opportunity to challenge through the facility's grievance process and through direct conversations with Defendants.  He has failed to point to any case law clearly establishing that he was entitled to more process than he received.  Thus, Plaintiff has failed to state a claim against Defendants Diaz and Maddox for a violation of his clearly established constitutional rights.  Nor has he shown that Defendants' conduct was objectively unreasonable.  As a result, the Court concludes that Plaintiff has failed to overcome Defendants' assertion of qualified immunity.

**4.    Conclusion**

For the reasons discussed above, after reviewing the pleadings, the Court grants Defendants' motion to strike as untimely Plaintiff's response to their motion to dismiss, Dkt. No. 39, and concludes that Plaintiff's pleadings are insufficient to overcome Defendants' entitlement to qualified immunity.  Consequently, the Court grants Defendants Diaz and Maddox's motion to dismiss.   Plaintiff's complaint and all remaining claims are dismissed with prejudice.

All relief not expressly granted is denied.

Judgment will be entered accordingly.

Dated September 26, 2025.

James Wesley Hendrix
United States District Judge

17